IRWIN M. ZALKIN, ESQ. (#89957)
DEVIN M. STOREY, ESQ. (#234271)
ALEXANDER S. ZALKIN, ESQ. (#280813)
RYAN M. COHEN, ESQ. (#261313)
The Zalkin Law Firm, P.C.
12555 High Bluff Drive, Suite 301
San Diego, CA 92130
Tel:  858-259-3011
Fax: 858-259-3015
Email:  Irwin@zalkin.com
        dms@zalkin.com
        alex@zalkin.com
        ryan@zalkin.com

WILLIAM LITVAK, ESQ. (#90533)
Dapeer, Rosenblit & Litvak, LLP
11500 W. Olympic Blvd., Suite 550
Los Angeles, CA 90064-1524
Tel:  310-477-5575
Fax: 310-477-7090
Email:  wlitvak@rllaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HEATHER MARLOWE**, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1. **VIOLATION OF SUBSTANTIVE DUE PROCESS, 42 U.S.C. § 1983** |
| **CITY AND COUNTY OF SAN FRANCISCO**, a governmental entity; **SUZY LOFTUS**, individually and in her official capacity as President of the San Francisco Police Commission; **GREG SURH**, individually and in his official capacity as Chief of Police of the San Francisco Police Department; **MIKAIL ALI**, individually and in his official capacity of Deputy Chief of the San Francisco Police Department; **JOE CORDES**, individually and in his official capacity as an officer of the San Francisco Police Department; and Does 6 through 100, inclusive, | 2. **VIOLATION OF EQUAL PROTECTION, 42 U.S.C. § 1983** |
| | 3. **VIOLATION OF EQUAL PROTECTION, CALIFORNIA CONSTITUTION ARTICLE 1, § 7** |
| | [DEMAND FOR JURY TRIAL] |
| | Date of Filing: January 6, 2016 |
| Defendants. | |

1

**COMPLAINT**

**NATURE OF ACTION**

1. Plaintiff is an individual who reported her sexual assault to the San Francisco Police Department ("SFPD"). The SFPD failed to investigate diligently the allegations made by Plaintiff, including failing to test Plaintiff's rape kit. Plaintiff seeks damages resulting from violations of due process, equal protection, and the California Constitution. Plaintiff also seeks a writ of mandate to compel the City and County of San Francisco to test her rape kit, or in the alternative, release the results of her tested rape kit to Plaintiff.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff Heather Marlowe ("Marlowe") is an individual, and at all times relevant was a citizen and resident of the County of San Francisco, State of California.

3. Defendant City and County of San Francisco ("San Francisco"), is a consolidated city-county located in California, and operates the SFPD.

4. Defendant Suzy Loftus was, at all times relevant, President of the San Francisco Police Commission. As stated on its website (http://sf-police.org/index.aspx?page=2572), "The mission of the Police Commission is to set policy for the Police Department…"

5. Defendant Greg Suhr is, and was at all times relevant, the Chief of Police of the SFPD. Defendant Suhr is responsible for overseeing the entire SFPD.

6. Defendant Mikail Ali is, and was at all times relevant, Deputy Chief of the SFPD in charge of the Forensic Division, which includes oversight of the SFPD forensic lab.

7. Defendant Joe Cordes was at all times relevant, an officer with the SFPD.

8. This action is brought pursuant to 42 U.S.C. § 1983, the Constitution of the State of California, and the common law.

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because the Defendants reside in this district and all wrongful acts and injuries occurred in this district.

**ALLEGATIONS OF WRONGFUL CONDUCT**

11. On April 6, 2010, Marlowe attended Bay to Breakers, a city-sponsored race, with a

group of friends.

12. While at Bay to Breakers, Marlowe was handed a beer in a red plastic cup by a male attendee, and Marlowe drank the beer.

13. Subsequently, Marlowe began feeling much more inebriated than would have been normal given her moderate alcohol consumption up to that point.  Marlowe regained consciousness inside an unfamiliar home approximately 8 hours after she was last seen at Bay to Breakers.  Marlowe was physically injured, experienced vaginal and pelvic pain, was nauseous and vomited several times, was dazed, confused, and had no memory of what had occurred in the house.

14. After gathering herself, Marlowe went to the nearest emergency room and contacted SFPD.  SFPD arrived thereafter, and drove Marlowe to San Francisco General Hospital ("Hospital").

15.  While at Hospital, Marlowe underwent a "rape kit" procedure performed by a Sexual Assault Nurse Examiner ("SANE") nurse.

16. At the end of the "rape kit" examination, Marlowe was assured by Hospital and SFPD that the results would be processed, and the results would be returned to her within fourteen (14) to sixty (60) days.

17. Around May 17, 2010, Marlowe returned to the neighborhood where she believed the house was located in which the rape occurred.  She recognized what she believed to be the house in which it occurred, and immediately called Officer Joe Cordes of the SFPD.

18. Around May 24, 2010, Marlowe met Cordes at the house that she had identified.  They knocked on the door and a man answered.  Cordes demanded that Marlowe enter the home while Cordes distracted the owner to see if Marlowe could identify the home as the scene of her rape.

19. Cordes' actions contributed to and increased the risk of harm to Marlowe, as well as changed the risk of harm that otherwise existed.  Marlowe was terrified that she would encounter her rapist inside the home with no protection from Cordes or any other officer of the SFPD.

20. As Marlowe searched the home, the home owner repeatedly yelled at Marlowe and Cordes that Cordes had no search warrant.

21. Marlowe could not reasonably identify the home as the location of her rape.

22. Around May 25, 2010, Marlowe searched google for what she believed was the name of her rapist. She found a picture of a man that resembled what she could remember of her rapist ("Suspect"). Marlowe informed Cordes of this new information.

23. Around May 27, 2010, Marlowe met Cordes at the police station. Cordes instructed Marlowe to make contact with Suspect, and flirt with him in order to elicit a confession that Suspect had indeed raped Marlowe. Cordes also instructed Marlowe to set up a date with Suspect to prove that Marlowe could identify Suspect in a crowd. Cordes told Marlowe that if she refused to engage in these actions, SFPD would cease its investigation of her rape.

24. Around June 8, 2010, Marlowe again met with Cordes at the police station to clarify what Cordes wanted Marlowe to do. At this time, Cordes strongly discouraged Marlowe from further pursuing her case, indicating that it was too much work for the SFPD to investigate and prosecute a rape in which alcohol was involved.

25. Nonetheless, Marlowe continued to pursue the investigation. Marlowe created an alias and began communicating with Suspect. Marlowe purchased a disposable mobile phone in order to text with Suspect, without revealing her true phone number. Eventually, Marlowe set up a "date" with Suspect, as required by Cordes. Suspect canceled the "date" and subsequently cancelled a second "date" that the two had set up.

26. Marlowe then contacted SFPD and informed them that she refused to continue to privately investigate her case. In response, SFPD informed Marlowe that they had brought Suspect in for questioning and had obtained a DNA sample from him.

27. Marlowe was also told that Suspect's DNA was sent to the lab for processing, and that the results of her "rape kit" should be available "any day now."

28. Marlowe contacted SFPD on December 14, 2010 to request an update on the processing of her rape kit. On December 15, 2010, Marlowe received a call back from Officer

1  Hutchings, informing Marlowe that neither her rape kit, nor Suspect's DNA had yet
2  been processed. Hutchings told Marlowe to call back in six months to check if her rape
3  kit, and Suspect's DNA had been processed.

29. On or about May 15th, 2011, Marlowe contacted SFPD to follow up on the status of her rape kit processing. Marlowe was told that because there was such a "backlog" at the lab of more "important crimes" that it could substantially more time until the processing of her rape kit. She was told that Suspect's DNA may also be in a different lab, but that SFPD did not know the exact the location of Suspect's DNA. Marlowe was told to keep "following up," and that eventually the "rape kit" would be processed.

30. On or about December 2011, Marlowe contacted SFPD. Marlowe was again told that the lab was backed up but that they will eventually get the rape kit processed. Marlowe was also told that SFPD was having trouble locating Suspect's DNA could not be located by SFPD.

31. Around August 28, 2012, Marlowe went to the SFPD station to follow up on the status of her rape kit. Marlowe was told that due to the passage of time, her case was considered "inactive" and was placed in a storage facility. SFPD also told Marlowe that because she was "a woman," "weighs less than men," and has her "menstruations," that Marlowe should not have been out partying with the rest of the city on the day she was drugged, kidnapped, and forcibly raped.

32. Despite these comments, Marlowe asked SFPD to retrieve her case from storage. SFPD again told Marlowe to follow up in six months.

33. Around September 25, 2012, Marlowe reached out to a third party, well connected woman ("Woman") who had seen a performance written and performed by Marlowe about her experience with the SFPD's investigation of her rape. Woman connected Marlowe with a person at Victim's Services, an entity affiliated with SFPD.

34. After several attempts Marlowe was unable to connect with this Victim's services representative. Woman then offered to reach out to California Attorney General Kamala Harris and San Francisco Police Commissioner Suzy Loftus to get Marlowe's rape kit

tested.

35. On October 18, 2012, Loftus informed Marlowe that her rape kit had been sent to the lab to be processed.

36. On October 20, 2012, SFPD informed Marlowe that her rape kit was tested and placed in their DNA database known as CODIS.

37. In November 2012, Marlowe learned of the national epidemic of law enforcement agencies failing to process thousands of rape kits nationwide. Marlowe attempted to contact Loftus to inquire about SFPD's processing of rape kits in light of this new information, but Loftus never responded.

38. Subsequently, Loftus invited Marlowe to speak about her experience at a City Police Commissioner's meeting.

39. On May 8, 2013, at the City Commissioner's meeting, city representatives gave a glowing review of the SFPD lab and represented to Marlowe and the public that every rape kit in its possession had been processed, and that there was no backlog of untested rape kits.

40. Due to pressure by the media at the meeting, SFPD promised to perform an audit to substantiate their claims that there was no backlog of rape kits, and that all rape kits had been processed.

41. On January 14, 2104, Marlowe filed a Citizen's Complaint with Defendant San Francisco.

42. Around February 20, 2014, SFPD announced the results of their audit. SFPD admitted that they were in possession of several thousand untested rape kits. However, SFPD only committed to testing 753 of the several thousand untested rape kits.

43. On December 10, 2014, SFPD issued a press release confirming that SFPD would only be testing 753 of the several thousand untested rape kits it had identified in its audit.

44. Around March 28, 2015, Marlowe read an article in the San Francisco Chronicle that outlined several ways in which the SFPD forensic lab was deficient, including but not limited to, "irregularities" in the handling of several pieces of forensic evidence

including rape kit evidence, as well as employment and retention of technicians that had failed proficiency tests.

45. Doubtful that her rape kit had in fact been processed, or processed correctly, Marlowe made a Public Records Request under the Freedom of Information Act. On May 5, 2015 Marlowe learned that the results of her rape kit, and any other information pertaining to it, were not "public records" subject to a Freedom of Information Act request.

46. To this day, Marlowe has never been given the results of her rape kit test, nor has she been provided with any documentation to substantiate the oral representations that her rape kit was, in fact, processed.

47. Based on information and belief, Marlowe's rape kit has, to this day, yet to be processed by the SFPD.

48. Furthermore, to this day, Marlowe has never been given any information, written or oral, that Suspect's DNA has been processed, nor has she been assured that Suspect's DNA was not lost by SFPD.

## SAN FRANCISCO'S POLICIES, PRACTICES AND CUSTOMS

49. Defendant San Francisco had the policy, practice and/or custom of failing to diligently investigate sexual assault allegations. For example, according to SFPD's own internal audit, several thousand rape kits, including 753 dating back to 2003, in SFPD's possession were not processed as of December 10, 2014.

50. Defendants failed to:
    a. Assure that evidence was not lost;
    b. Determine if an offense was committed;
    c. Arrange for the timely analysis and evaluation of evidence;
    d. Determine if other crimes may have been committed by the suspect;

51. On information and belief, the failure to investigate crimes of sexual assault were consistent with an institutional practice of the SFPD, which was known to and ratified by the City and County of San Francisco and its agents, the Defendant San Francisco having failed to take any effective action to prevent the SFPD police personnel from

1. continuing to engage in such misconduct.
52. On information and belief, Defendant San Francisco had prior notice of the reckless, willful and wanton, deliberate and/or intentional actions of their employees and agents, but took no steps to train them, correct abuses of authority, or discourage the unlawful use of authority. The failure to properly train their employees and agents included the failure to instruct them as officers of the peace and in applicable laws of California.
53. On information and belief, Defendant San Francisco authorized, tolerated as institutional practices, and ratified the misconduct above by:
    a. Failing to properly supervise SFPD personnel;
    b. Failing to properly train SFPD personnel;
    c. Failing to properly discipline, restrict, and control employees, including but not limited to, investigating crimes of sexual assault against females;
    d. Failing to take adequate precautions in the hiring, promotion and retention of police personnel;
    e. Failing to protect and ensure evidence is not lost or mishandled; and
    f. Failing to establish and/or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of sexual assault, but instead responding to such complaints with bureaucratic power and official denials calculated to mislead the public.
54. Defendants Loftus, Suhr and Ali were all individually, and collectively, responsible for creating and perpetuating the policy of failing to test rape kits.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 - VIOLATION OF SUBSTANTIVE DUE PROCESS

55. Plaintiff incorporates paragraphs 1 to 54 as if fully stated herein.
56. At all times relevant herein, Defendants and the SFPD acted under the color of the state. Upon information and belief, the SFPD was following policies and procedures.
57. At all times relevant herein, Defendant knew that victims of sexual assault had provided evidence of sexual assault, and that Defendants were not taking steps to investigate

properly the allegations.

58. Defendants had a duty to investigate diligently the allegations and to submit the sexual assault kits for testing.

59. At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

    a. Defendants violated Plaintiff's Due Process Clause property interests in her DNA samples, which had been provided and stored at the SFPD's facility, and her right to redress in the courts, by failing to investigate, by either failing to submit sexual assault kits for testing or failing to report the results to the victims whose kits were tested, or arrest the accused;

    b. Defendants violated Plaintiff's Due Process Clause property interests in her persons, by failing to investigate, by either failing to submit sexual assault kits for testing or failing to report the results to the victims whose kits were tested, or arrest the accused.

60. Defendants with deliberate indifference, failed to train its police officers as to the rights of persons with whom the police come into contact, including but not limited to Marlowe.

61. Defendants' deliberate indifference, and willful and wanton behavior, created a danger of and increased the risk of harm by sexual abuse.

62. Defendants violated Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

63. The constitutional injury inflicted by Defendants was caused by a person with final policymaking authority at The City and County of San Francisco.

64. Defendants knew about the above-described conduct and facilitated it, approved it,

condoned it, and/or turned a blind eye to the conduct.

65. The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – VIOLATION OF EQUAL PROTECTION

66. Plaintiff incorporates paragraphs 1 to 54 as if fully stated herein.

67. At all times relevant herein, Defendants and the SFPD acted under the color of the state. Upon information and belief, the SFPD was following policies and procedures.

68. At all times relevant herein, Defendants knew that victims of sexual assault had provided evidence of sexual assault, and that Defendants were not taking steps to investigate properly the allegations.

69. Defendants had a duty to investigate diligently the allegations and to submit the sexual assault kits for testing.

70. At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiffs of rights and/or privileges secured by the constitution, including but not limited to:

   a. Defendants violated Plaintiff's Due Process Clause property interests in her DNA samples, which had been provided and stored at the SFPD's facility, and her right to redress in the courts, by failing to investigate, by either failing to submit sexual assault kits for testing or failing to report the results to the victims whose kits were tested, or arrest the accused;

   b. Defendants violated Plaintiff's Due Process Clause property interests in her persons, by failing to investigate, by either failing to submit sexual assault kits for testing or failing to report the results to the victims whose kits were tested, or arrest the accused.

71. Defendants with deliberate indifference, failed to train its police officers as to the rights of persons with whom the police come into contact, including but not limited to

Marlowe.

72. Defendants' deliberate indifference, and willful and wanton behavior, created a danger of and increased the risk of harm by sexual abuse.

73. Defendants' conduct was motivated by gender.

74. Defendants' conduct was intentional, and due to Plaintiff's female gender.

75. Defendants have a history of discriminating against females. Defendants have treated sexual assault reports from women with less priority than other crimes not involving women reporting sexual assaults.

76. Defendants violated Plaintiff's civil rights by having an express policy that, when enforced, had the effect of discriminating against women based solely on their gender.

77. Defendants violated Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

78. The constitutional injury inflicted by Defendants was caused by a person with final policymaking authority at The City and County of San Francisco.

79. Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

80. The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

### THIRD CAUSE OF ACTION

### CALIFORNIA CONSTITUTION ARTICLE 1, § 7 – VIOLATION OF EQUAL PROTECTION

81. Plaintiff incorporates paragraphs 1 to 54 as if fully stated herein.

82. Defendants violated Plaintiff's civil rights by having an express policy of failing to properly investigate sexual assault reports made by women that, when enforced, caused

**COMPLAINT**

a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom of failing to properly investigate sexual assault reports made by women that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

83. This policy was intentional and, when enforced, had a discriminatory impact on women.

84. The constitutional injury inflicted by Defendants was caused by a person with final policymaking authority at The City and County of San Francisco.

85. Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

86. The above-described conduct of Defendants constitutes a violation Article 1, § 7 of the California Constitution. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

## REMEDIES, COSTS AND ATTORNEY'S FEES

87. Plaintiff incorporates paragraphs 1 to 86 as if fully stated herein.

88. Pursuant to Code of Civil Procedure section 1085, Plaintiff is entitled to a writ of mandate to compel Defendant San Francisco to test Plaintiff's rape kit, or if the rape kit has been tested provide Plaintiff with the results of the test. Petitioner is further entitled to damages under Code of Civil Procedure section 1095.

89. Plaintiff is entitled to recover reasonable costs, including attorney fees under the Civil Rights Act (42 U.S.C., § 1988), to enforce constitutional rights in the administrative and judicial proceedings.

**WHEREFORE**, Plaintiffs pray for a writ of mandate compelling Defendant San Francisco to test Plaintiff's rape kit or release the results of the processed rape kit to Plaintiff; damages; costs; interest; statutory/civil penalties according to law; attorneys' fees and costs of litigation pursuant to 42 U.S.C. §1988 or other applicable law; and such other relief as the court deems appropriate and just.

## DEMAND FOR TRIAL BY JURY

**COMPLAINT**

NOW COME Plaintiff, by and through her counsel, and hereby demands a trial by jury as to all of those issues so triable as of right.

Date: January 6, 2016                                   Respectfully submitted,

                                                By:     /s/ Alexander S. Zalkin
                                                        Alexander S. Zalkin

                                                THE ZALKIN LAW FIRM, P.C.
                                                IRWIN M. ZALKIN
                                                DEVIN M. STOREY
                                                ALEXANDER S. ZALKIN
                                                RYAN M. COHEN

                                                DAPEER, ROSENBLIT & LITVACK, LLP
                                                WILLIAM LITVAK, ESQ.

                                                Attorneys for Plaintiff

**COMPLAINT**